IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RANDY L. SCOTT,**                         Case Number 1:13cv648

      Petitioner,                         Judge Jeffrey J. Helmick

      v.                         Magistrate Judge James R. Knepp, II

**WARDEN LAROSE,**

      Respondent.                         REPORT AND RECOMENDATION


### INTRODUCTION

*Pro se* Petitioner Randy L. Scott, a prisoner in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden LaRose filed a Return of Writ (Doc. 11) with attached exhibits, and Petitioner filed a Traverse (now termed "Reply") (Doc. 12). *See* Advisory Committee Notes (1976) to Rule 5 of Rules Governing Section 2254.

The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated May 10, 2013). For the reasons discussed below, the undersigned recommends the Petition be dismissed.

### FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings were erroneous. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524,

530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. Ohio's Fifth District Court of Appeals set forth the following findings of fact:

> The victim in this case is P.E., the minor daughter of appellant. The victim was born in 1994. K.S. is appellant's wife and the victim's stepmother. Appellant was the custodial parent of the victim, not having married the victim's mother. Appellant and K.S. both worked as corrections officers in Richland County.
>
> The following facts are adduced from the record of appellant's trial.
>
> This case arose on May 5, 2010, when K.S. called 911 and reported to the Richland County Sheriffs Department that appellant had raped the victim.
>
> *The History of Abuse*
>
> At trial, the victim testified to repeated acts of sexual abuse by appellant that began when she was 11 years old. The incidents occurred at the family home in Richland County. The victim stated she didn't tell anyone because she was afraid appellant would lose his job and go to jail. She also didn't want to break up her family.
>
> The victim further testified she was afraid of appellant, in part because he was bigger than she was, but also because she had been led to believe that appellant had killed a younger sibling.
>
> The victim further testified [she] didn't tell anyone about the rapes because she didn't want appellant to be arrested and she always considered herself to be "daddy's girl."
>
> The pattern of sexual assaults continued, increasing in frequency as the victim got older, to the point that she was raped as often as once a week. She would say no but the assaults continued. The victim tried to avoid appellant. Her stepmother was never home when the assaults occurred.
>
> The assaults occurred in appellant's bedroom, the victim's bedroom, and the laundry room in the basement. The victim was able to time the general history of the abuse based upon where her family was living at the time. They lived in two different houses in Mansfield.
>
> *Indicted Offenses: April 2010*
>
> Throughout the month of April, 2010, the rapes occurred once or twice a week. The incidents occurred in the victim's bedroom.

*Indicted Offenses: May 3, 2010*

The final act of rape was clear in the victim's mind because she disclosed it to her cousin shortly thereafter and appellant was arrested two days later.

On the evening of Monday, May 3, 2010, K.S. was not home from work yet. The victim was in her bedroom after showering and was raped by appellant. He ejaculated on her stomach. The victim thereafter wiped herself off with a pink towel. She then placed the pink towel in her dirty clothes basket in her closet. The victim called and texted her cousin to tell him she had been raped again.

Most of the adult family members closest to the victim, whether by relationship or proximity, claimed to have no idea the abuse was taking place. The victim did reach out, however, to her friends and younger family members, who testified to the disclosures at trial. Ultimately, on May 5, 2010, the incidents were disclosed to K.S.

K.S. then called 911 to report the rapes. A Richland County Sheriffs deputy came to the house and learned the basic details of the allegations from K.S. The deputy told K.S. to take the victim to the hospital for a rape exam, and contacted detectives and children's services.

*The SANE Exam*

At MedCentral Hospital, the victim met with sexual assault nurse examiner (SANE) Tammy Lawhorn. Lawhorn's purpose was to perform a head-to-toe examination, record the history presented, collect evidence, diagnose and treat medical conditions, and forward her findings.

K.S. brought the victim to the hospital on May 5, 2010 at 4:55 p.m. A representative from children's services was also present.

Lawhorn first obtained a history from her, who told her she was sitting on her bed when her father came into the room and told her to stand up. She said no, and he turned the lights off. He pinned her to the floor, licked her vagina, and put his penis in her vagina. His sperm went all over her stomach, and then he went back downstairs to watch the Cavs game. The victim further stated this was not the first rape; the abuse started when she was 11 and had occurred over 30 times. She never told anyone because she was scared; and she had a baby sister who was killed by appellant.

Lawhorn testified that an exam is "acute" if the sexual assault occurred within the previous 72 hours. She performed a genital exam with a colposcope, which magnifies injuries, and noted two "old tears" to the patient's hymen, multiple blisters on the lips of the vagina, and a bruised cervix. Although Lawhorn agreed

3

that tears to the hymen and vaginal blisters could be caused by a number of things other than sexual assault, the bruise to the cervix was caused by blunt force trauma. These injuries were consistent with the history related by the victim.

Lawhorn's exam collected key pieces of evidence including the underwear the victim wore to the hospital and a rape kit. Lawhorn notified a deputy that the victim had cleaned herself after the assault with the pink towel, and the deputy sent K.S. back to the house to retrieve the towel. K.S. later testified she found the towel in the victim's dirty-clothes basket, and picked it up by placing a plastic grocery bag over her hand. She placed the towel into a separate plastic bag and turned it over to investigators.

*The Physical Evidence*

Investigators executed a search warrant upon appellant's residence and collected a number of pieces of physical evidence, including cuttings from carpet and P.E.'s mattress. Ultimately investigators submitted physical evidence most likely to yield DNA results, including the rape kit from the hospital, a DNA standard from appellant, the pink towel found in the victim's dirty-clothes basket, and a mattress cutting. These items were submitted to B.C.I. for analysis. Richland County, Case No. 11CA80

Forensic analysts confirmed the presence of semen on the crotch of the victim's underwear and on the pink towel. On the pink towel, the semen appeared in ten different spots. Two DNA profiles were detected in the cutting from the crotch of the victim's underwear: those of the victim and appellant. One DNA profile was extracted from the semen detected on the pink towel: appellant's.

*The Death of the Victim's Sibling*

One issue at trial was why the victim didn't tell anyone, which was explained in part by her fear of appellant. She testified that appellant never made any express threat against her, and yet she never fought back or forcefully resisted. Although she thought about "kicking him in the balls," she never did so. She thought appellant would physically hurt her if she told anyone.

The victim testified that her fear of appellant was based in part upon her belief that he had killed her baby sister. The victim testified she had asked appellant how the sibling had died and he told her on different occasions that she was sick and that she was murdered. This topic was explored further with Detective Patrice Smith on re-cross by the defense. Det. Smith testified she was aware the victim had been told appellant killed her sister. Smith stated summarily, in response to defense questioning, that the allegation was investigated and nothing came of it. Upon redirect, when asked how the child died, Smith replied she had head trauma and a lacerated liver from being punched in the abdomen.

4

When appellant testified, even more details of the child's death were elicited by the defense. Appellant stated the child was 11 months old when she died. In the 24 hours leading up to her death, the child was with, at different times, her mother, appellant, and appellant's mother. Appellant's mother called him to say the child was not responding and they were taking her to the hospital. Upon his arrival, she had already passed away. Appellant testified that two weeks later he learned the death was being investigated as a homicide.

Upon cross-examination, appellant stated the child was murdered but not by him. Prior to her death, the child had a history of unexplained bruises and injuries.

*Appellant's Testimony at Trial*

Appellant testified on his own behalf at trial. He denied any type of sexual contact or conduct with the victim. He had no explanation why the victim would make up the allegations. He related his version of the events of May 3, 2010.

Appellant had disciplined the victim earlier in the day by taking her cell phone away because he learned she was sent to in-school suspension for texting at school.

That evening, K.S. was at work and Appellant had been watching a basketball game but went upstairs. Appellant heard the shower running and reached into the room to jokingly turn the light on and off while his daughter was in the shower. Appellant then went into his bedroom to turn on the basketball game on the television there. He heard his daughter come out of the bathroom, and go into her bedroom and close the door.

A few minutes later, the telephone rang and when he answered it, no one was there, but the caller ID indicated his daughter's friend had called. He took the telephone to her room, knocked on her door, and she stuck her head out. Appellant told her a friend had called and his daughter took the phone. After then [sic] took a shower, and he returned to his bedroom and remained there for the rest of the night.

Appellant further testified that he has a problem with "longevity during sexual intercourse" and therefore masturbates if he expects to later be intimate with his wife. He claimed he masturbated and cleaned up with the pink towel, which he placed in his own dirty-clothes basket.

Appellant had no explanation for how his semen turned up in the crotch of his daughter's underwear, or how the pink towel containing his semen wound up in his daughter's clothes basket.

(Ex. 15, Doc. 11-1, at 108-14).

5

## PROCEDURAL BACKGROUND

The relevant procedural history is accurately summarized in Respondent's brief and is incorporated herein as follows, with only minor changes. (Doc. 11).

### *State Court Conviction*

The May 2010 term of the Richland County Grand Jury indicted Petitioner on four counts of rape in violation of Ohio Rev. Code § 2907.02(A)(2) (counts 1-4), four counts of sexual battery in violation of Rev. Code § 2907.03(A)(5) (counts 5-8), four counts of gross sexual imposition in violation of Rev. Code § 2907.05(A)(1) (counts 9-12), and one count of kidnapping in violation of Rev. Code § 2905.01(A)(4) (count 13) with a sexual motivation specification. (Ex. 1, Doc. 11-1, at 1). Petitioner pled not guilty to all charges. (Ex. 2, Doc. 11-1, at 5).

Prior to trial, Petitioner filed a motion to compel the production of written witness statements (Ex. 3, Doc. 11-1, at 6), but the State represented that none existed (Doc. 11-2, at 32-33). Petitioner also filed a motion, which he later amended, to suppress or limit evidence relating to the victim's underwear and pink towel, evidence regarding the circumstances surrounding the death of Petitioner's child, evidence of sexual abuse prior to the indicted offenses, and statements made by the victim to the state's witnesses regarding Petitioner's sexual crimes. (Exs. 4, 5, Doc. 11-1, at 8, 11). The court deferred ruling on the admissibility of the victim's disclosures to friends and family regarding the abuse. (Doc. 11-2, at 19-20). Subject to a limiting instruction, the court allowed evidence relating to ongoing sexual abuse and allegations the Petitioner murdered the victim's sibling. (Doc. 11-2, at 17, 20-30). On August 19, 2011, the jury found Petitioner guilty as charged. (Ex. 6, Doc. 11-1, at 15). Petitioner submitted a sentencing

memorandum, where he argued some of the convictions should be merged as lesser included or allied offenses. (Ex. 7, Doc. 11-1, at 28).

On August 26, 2011, the court sentenced Petitioner to ten years in prison for each rape conviction (counts 1-4), three years for each sexual battery conviction (counts 5-7), five years for the sexual battery conviction in count eight, eighteen months for each gross sexual imposition conviction (counts 9-12), and ten years for the kidnapping conviction (count 13). Counts 2, 3, 5, 6, 7, 9, 10, 11 and 13 were to be served concurrently and Counts 1, 4, 8 and 12 were to be served consecutively for an aggregate sentence of 26 years and 6 months. (Ex. 8, Doc. 11-1, at 34-36). The Court classified Petitioner a Tier III Sex Offender. (Ex. 9, Doc. 11-1, at 37).

***Direct Appeal***

On September 8, 2011, Petitioner, through counsel, appealed to the Fifth District Court of Appeals. (Ex. 11, Doc. 11-1, at 40). Petitioner raised the following assignments of error in his brief:

> 1. Appellant was denied his state and federal due process right to a fair trial when the jury was exposed to highly prejudicial character evidence in violation of Evid. R. 403(A) and 404(8).
>
> 2. Appellant was denied his state and federal due process right to a fair trial when the prosecution was improperly permitted to bolster the victim's credibility with evidence of prior consistent statements.
>
> 3. Appellant was denied his state and federal constitutional rights to the effective assistance of counsel when counsel failed to object to numerous inadmissible pieces of evidence.
>
> 4. Appellant['] state and federal due process right to a fair trial was violated when the trial court instructed the jury to pay particular attention to appellant's interest in the outcome of the case and resulting bias when instructing the jury on how to assess witness credibility.
>
> 5. Appellant was deprived of his state and federal constitutional rights to a fair trial as a result of the cumulative impact of the errors.

7

> 6. Appellant was denied his state and federal constitutional rights to due process and protection from double jeopardy when the trial court failed to properly merge several counts involving allied offenses in violation of R.C. 2941.25.

(Ex. 12, Doc. 11-1, at 42). The state filed a responsive brief (Ex. 13, Doc. 11-1, at 78) and Petitioner replied (Ex. 14, Doc. 11-1, at 100).

On July 23, 2012, the court of appeals affirmed the judgment of the trial court in part and reversed in part. (Ex. 15, Doc. 11-1, at 107). The court overruled the first five assignments of error but sustained the sixth. (*Id.*, at 116-24). It remanded the case to the trial court to review which offenses were allied offenses of similar import requiring merger. (*Id.*, at 125-28; Ex. 16, Doc. 11-1, at 132). Judge Hoffman wrote a concurring opinion in which he stated that, unlike the majority, he believed the trial court erred in admitting evidence of prior sexual abuse of the victim, but found the error harmless in light of the court's cautionary instruction and the weight of admissible evidence. (Ex. 15, Doc. 11-1, at 130-31). Judge Hoffman also found trial counsel's failure to object could not be considered trial strategy, but concluded counsel was not ineffective because his actions were not prejudicial. (*Id.*).

On August 30, 2012, Petitioner, *pro se*, appealed to the Ohio Supreme Court. (Ex. 17, Doc. 11-1, at 133). In his Memorandum in Support of Jurisdiction he raised the following propositions of law:

> 1. The trial court denied the Appellant due process and a fair trial as well as infringed upon his constitutional right to testify on his own behalf when it instructed the jury that his testimony was biased.

> 2. The admission of the victim's prior consistent statements to bolster the victim's credibility violated Appellant's right to a fair trial and violated his due process rights under the Ohio and U.S. Constitutions.

> 3. The admission of highly prejudicial character evidence denied Appellant a fair trial and violated his right to due process under the Ohio and U.S. Constitutions.

8

4. Trial Counsel's failure to object to numerous instances of inadmissible evidence denied Appellant his right to effective assistance of counsel as guaranteed by the State and U.S. Constitutions.

5. The cumulative impact of the errors at trial deprived Appellant of his State and Federal constitutional rights to due process and denied him his right to a fair trial.

(Ex. 18, Doc. 11-1, at 136). The state opposed jurisdiction. (Ex. 19, Doc. 11-1, at 179). On November 28, 2012, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Ex. 20, Doc. 11-1, at 190).

### Post-Conviction Petition

On July 5, 2012, while his appeal was pending in the Fifth District Court of Appeals, Petitioner, *pro se*, moved the Richland County Court of Common Pleas to vacate his judgment. (Ex. 21, Doc. 11-1, at 191). Petitioner claimed the DNA evidence was unreliable (*Id*.) and requested funds to hire a DNA expert (Ex. 22, Doc. 11-1, at 194). The state opposed his motions. (Ex. 23, Doc. 11-1, at 197). On July 17, 2012, the trial court dismissed the motions finding they lacked jurisdiction due to the pending appeal. (Ex. 24, Doc. 11-1, at 199).

### Re-Sentencing

On August 9, 2012, the trial court re-sentenced Petitioner pursuant to the remand order issued by the court of appeals. (Ex. 25, Doc. 11-1, at 201-03). The court merged counts 1-3 with counts 5-7 and counts 9-11 with counts 4 and 13. (*Id*.). The trial court resentenced Petitioner to ten years for each rape charged in counts 1-4, five years for sexual battery as charged in count 8, and eighteen months for gross sexual imposition as charged in counts 9 and 12. (*Id*.). Counts 1, 2, 3 and 12 were to be served concurrently, and count 4 was to be served consecutively with counts 1-3, 8, and 9. (*Id*.). As before, the aggregate sentence was 26 years, 6 months. (*Id*.). Petitioner has not appealed the sentence.

## FEDERAL HABEAS CORPUS

Petitioner, *pro* se, provided the instant Petition for writ of habeas corpus to the prison for

mailing on March 19, 2013. (Doc. 1, at 16). There, he raised the following grounds for relief:

> **GROUND ONE:** The trial court violated Petitioner's rights to due process and to a fair trial in violation of the 5th, 6th, and 14th Amendments when it impeded his right to testify in his own defense.
> **Supporting Facts:** The trial court instructed the jury that Petitioner's interest in the outcome of the trial made him a biased witness and the court told the jury to pay particular attention to this bias, thus diminishing his right to testify on his own behalf as imbedded in the 5th, 6th, & 14th Amendments. The Petitioner had a constitutional right to testify and to have that testimony held to the same standard as all other witnesses.

> **GROUND TWO:** The admission of prior consistent statements violated Petitioner's right to a fair trial and due process as guaranteed by the 5th & 14th Amendments.
> **Supporting Facts:** The trial court allowed four witnesses to testify as to unsworn statements that the alleged victim had made to them. These repeated violations of the hearsay rules were pervasive enough to violate Petitioner's right to due process and to deny him a fair trial.

> **GROUND THREE:** Petitioner's rights to due process and a fair trial as guaranteed by the fifth & 14th Amendments were violated by the admission of prior bad acts.
> **Supporting Facts:** The state improperly presented unsubstantiated allegations that the Petitioner had killed his infant daughter and also that the sexual abuse of the accuser had begun years before the acts alleged in the indictment. The inadmissible evidence was so inflammatory as to violate the integrity of the trial process.

> **GROUND FOUR:** Petitioner received ineffective assistance of trial counsel in violation of the 6th & 14th Amendments for counsel's continued failure to object to the introduction of inflammator[y] and inadmissible evidence.
> **Supporting Facts:** Trial counsel failed to object when the state presented evidence that Petitioner had beat his child's mother; that he told the child's mother that he had a nasty dream about her; that Petitioner had allegedly flirted with his daughter's teenage friend. None of this testimony was arguably admissible and the failure to object constitutes ineffective assistance of counsel.

> **GROUND FIVE:** Petitioner was denied his right to due process and a fair trial as a result of the cumulative errors at trial in violation of the 5th, 6th, & 14th Amendments.

**Supporting Facts:** The vast number of errors by the trial court compromised the integrity of the judicial process and cumulatively denied the Petitioner due process the right to a fair trial.

(Doc. 1, at 5-13).

JURISDICTIONAL ISSUES

For the following reasons, grounds one, two, three, and five of the Petition may not be resolved on the merits and should be dismissed as procedurally defaulted or non-cognizable claims.

***Procedural Default***

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

When a petitioner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*, 459 U.S. 4 (1982). Moreover, a failure to present a claim to the highest court in the state deprives a federal court hearing a habeas petition of jurisdiction on that issue. *See McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

If the state argues a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the federal court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule. Second, the federal court must determine whether the state courts actually enforced the state procedural sanction – that is, whether the state courts actually based their decisions on the procedural rule. Third, the federal court must consider whether the procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim. . . . Fourth, if the federal court answers the first three questions in the affirmative, it would not review the petitioner's procedurally defaulted claim unless the petitioner can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice.

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (internal citations omitted)).

<u>Ground One</u>

In ground one, Petitioner alleges the trial court violated his Constitutional rights by instructing the jury he was a biased witness. (Doc. 1, at 5). Respondent claims Petitioner waived this argument because it was never raised in the trial court as a contemporaneous objection. (Doc. 11, at 18-20). Thus, the *Maupin* standard applies.

Applying the first *Maupin* prong, the applicable state procedural rule is Ohio Crim. R. 30(a), which holds in relevant part, "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict". *See*, *Scott v. Mitchell*, 209 F.3d 854, 865 (6th Cir. 2000). Petitioner does not question the applicability of Ohio's contemporaneous objection law nor does he claim to have made an objection at trial.

Second, the Fifth District Court of Appeals clearly relied on the contemporaneous objection rule in its decision. The court of appeals held:

> In his fourth assignment of error, appellant asserts the trial court erred in instructing the jury to pay particular attention to appellant's interest in the outcome of the case and any bias that interest may engender.
>
> No objection was raised to the jury instructions given by the trial court. Crim.R. 30(A) states: "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."
>
> We therefore review this issue for plain error. Pursuant to Crim.R. 52(8), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule places several limitations on a reviewing court's determination to correct an error despite the absence of timely objection at trial: (1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Dunn,* 5th Dist. No. 2008-CA-00137, 2009 Ohio 1688, citing *State v. Morales,* 1 O Dist. Nos. 03-AP-318, 03-AP-319, 2004 Ohio 3391, at ¶ 19 (citation omitted).
>
> The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Barnes,* supra, quoting *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. The Ohio Supreme Court has noted "* * * an erroneous jury instruction 'does not constitute a plain error or defect under Crim.R. 52(8) unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Cooperrider,* 4 Ohio St.3d 226, 227, 4 Ohio 8. 580, 448 N.E.2d 452 (1983), citing *State v. Long,* 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).
>
> We have carefully reviewed the record of this case, and find the evidence of appellant's guilt to be substantial. We find the trial court's instruction did not rise to level of plain error because the outcome of the trial would not have been otherwise absent the instruction. See, *State v. Broucker,* 5th Dist. No. 2007CA00315, 2008 Ohio 2946, 1J 38.

(Ex. 15, Doc. 11-1, at 123-24). Importantly, "[a] state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default." *Jalowiec v.*

*Bradshaw*, 2008 WL 312655, at *23 (N.D. Ohio), *aff'd*, 657 F.3d 293 (6th Cir. 2011) (citing *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004)).

Third, "[t]he Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice". *Jalowiec*, 2008 WL 312655, at *23 (citing *Williams*, 380 F.3d at 968); *Scott*, 209 F.3d at 868.

Last, Petitioner has claimed neither cause nor prejudice for the default. (Docs. 1, at 5; 12, at 1). Moreover, he has not claimed actual innocence. Accordingly, the undersigned recommends the Court dismiss ground one of the Petition because it is procedurally defaulted.

### *Non-cognizable Claims*

Before turning to the merits of Petitioner's claims, the Court must determine whether it has jurisdiction over Petitioner's claims for purposes of habeas corpus review. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes two jurisdictional prerequisites for federal habeas corpus review of state convictions. 28 U.S.C. § 2254(a). First, the petitioner must be in custody. *Id*. Second, the petitioner must challenge the legality of custody on the ground it is, or was imposed, "in violation of the Constitution or laws or treaties of the United States." *Id*. Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("[a] claim based solely on an error of state law is not redressable through the federal habeas process.") (quoting *Estelle v. McGuire*, 502 U.S.62, 67–68 (1991)).

Nevertheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams v. Anderson*, 460 F.3d 789, 816

(6th Cir. 2006). "[T]he category of infractions that violate fundamental fairness is defined very narrowly", and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1977) (citations omitted)); *see also Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993). Of relevance, "[f]ederal habeas courts review state court evidentiary decisions only for consistency with due process." *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001) (citing *Patterson v. New York*, 432 U.S. 197, 202 (1977)). The habeas petitioner bears the burden to show "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

<u>Ground Two</u>

In his second ground for relief, Petitioner argues his Fifth and Fourteenth Amendment rights were violated by admission of the victim's prior consistent statements of prior abuse. (Doc. 1, at 7).

Simply stated, Petitioner's claim is non-cognizable in federal court because the victim testified at trial. Indeed, "[t]he admission of a prior consistent statement when the declarant is available for cross-examination at trial . . . is not a question that rises to the level of a constitutional violation for purposes of habeas corpus relief." *O'Hare v. Woods*, 2012 U.S. Dist. LEXIS 44920, at * 29-30 (E.D. Mich.) (citing *United States ex. Rel. Gonzalez v. DeTella*, 918 F. Supp. 1214, 1222 (N.D. Ill. 1996); *see also Dillon v. Warden, Ross Corr. Inst.*, 541 F. App'x 559, 605 (6th Cir. 2013) (finding error where prior consistent statements were admitted but the declarant did not testify at trial). Here, Petitioner had a full and fair opportunity to cross-examine

the victim when she testified at trial. (Ex. 15, Doc. 11-1, at 119-20). Furthermore, Petitioner has pointed to no clearly established Supreme Court precedent which holds that a state violated due process by admitting evidence of a victim's prior consistent statements at a trial in which she testified. *Bugh*, 329 F.3d at 512.

Additionally, the Court does not find the state court committed an error offending "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental". *Bugh*, 329 F.3d at 512. Indeed, Petitioner challenged the evidence in motions in limine and oral argument, had a full and fair opportunity to cross-examine the witnesses, and rebutted the evidence with his own testimony. In addition, the trial court issued a limiting instruction, informing the jury that evidence of prior offenses with the victim were not charged in the indictment and if believed, the jury "may consider that evidence only for the purpose of deciding whether it proves force on the part of the Defendant sufficient to overcome fear or duress on the part of the victim; that is, in this case, it goes to the status of mind of the victim and can't be used against the Defendant to prove his character or that he acted in conformity therewith." (Doc. 11-6, at 186). Therefore, Petitioner's second ground for relief should be dismissed as non-cognizable.

Ground Three

Like ground two, Petitioner's third ground for relief, claiming the state court improperly admitted evidence of prior bad acts, is non-cognizable. (Doc. 1, at 8). Petitioner has pointed to no clearly established Supreme Court precedent which holds a state violated due process by admitting evidence of prior bad acts at trial. *Bugh*, 329 F.3d at 512. Moreover, the state courts did not commit an error offending "some principle of justice so rooted in the traditions and

conscience of our people as to be ranked as fundamental" in this case. *Bugh*, 329 F.3d at 512.

Indeed, as previously stated, Petitioner's counsel challenged admission of the evidence in pre-trial motion in limine proceedings, had a full and fair opportunity to cross-examine the victim, and rebutted the evidence with Petitioner's testimony. (Doc. 11-2, at 25-30). Further, the trial court made a limiting instruction, telling the jury "[t]he evidence of the death of the child can be considered only as it relates to the state of mind of the victim and cannot be considered for any purpose relating to the Defendant." (Doc. 11-6, at 186). Similarly, with regard to evidence of prior abuse of the victim, the trial court cautioned that the evidence could not be considered to prove the character of the Petitioner in order to show he acted in conformity with that character and if evidence of the other acts was believed, it could only be considered for purposes of deciding the victim's state of mind. *Id*. Because Petitioner cannot show unfair prejudice from the admission, he has not demonstrated a due process violation. *See Bey*, 500 F.3d at 522–23. And because Petitioner cannot show the state court's determination deprived him of due process, he has not alleged a cognizable federal habeas claim. *See Wynne*, 606 F.3d at 871 (citing *Estelle*, 502 U.S. at 68).

Ground Five

In ground five, Petitioner claims the "vast number of errors by the trial court compromised the integrity of the judicial process and cumulatively denied the Petitioner due process". (Doc. 1, at 12). However, claims for cumulative error are non-cognizable. *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("the law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."). Therefore, ground five is non-cognizable and should be dismissed.

**STANDARD OF REVIEW**

When the basis for a federal habeas claim has been previously adjudicated by the state courts, AEDPA provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409–11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

State trial court factual determinations are presumed correct and a petitioner must present clear and convincing evidence to the contrary in order to overcome the correctness presumption. 28 U.S.C. § 2254(e). "It is a clearly established rule that errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in federal habeas corpus proceedings." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

18

***Ground Four***

In ground four, Petitioner claims he received ineffective assistance of counsel because his trial attorney failed to object when the state presented evidence that Petitioner beat his child's mother, told the child's mother he had a nasty dream about her, and allegedly flirted with his daughter's teenage friend. (Doc. 1, at 10). This claim is addressed on the merits.

Effective assistance of trial counsel is guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy both prongs of the test set forth in *Strickland*: that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and unreliable. *Strickland*, 466 U.S. at 698; *Harries v. Bell*, 417 F.3d 631, 636 (6th Cir. 2005) (citing *Strickland*, 466 U.S. at 686–692).

To meet the deficient performance prong, counsel's representation must fall below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688. To meet the prejudice prong, there must exist a reasonable probability that, absent counsel's unprofessional errors, the results of the proceeding would have been different. *Id.*, at 694. When considering the prejudice element, the focus is on whether counsel's errors undermined the reliability of and confidence in the result. *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 370 (1993)). This is a high burden:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is,

the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689.

Review of a *Strickland* claim is doubly deferential in a § 2254 proceeding. *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam) ("Judicial review of a defense attorney[] . . . is . . . highly deferential – and doubly deferential when conducted through the lens of federal habeas."). This double deference arises because the *Strickland* standard is a general standard, giving a state court even more latitude to reasonably determine that a defendant has not satisfied the standard. *Knowles v. Mirzayance*, 556 U.S. 11, 123 (2009). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter*, 131 S. Ct. at 785. Accordingly, the pivotal question in any § 2254 action that presents an ineffective assistance claim, is "whether the state court's application of the *Strickland* standard was unreasonable." *Id.*, at 785.

Here, the Fifth District Court of Appeals overruled Petitioner's ineffective assistance claim as follows:

> In his third assignment of error, appellant argues he received ineffective assistance of trial counsel because counsel failed to object to three instances of improper character evidence. We disagree.

* * *

> First, we note the record is replete with objections raised by appellant's trial counsel to various evidence and arguments presented by the state. Appellant points, though, to three specific comments by witnesses to which defense trial counsel raised no objection: the victim's mother's references to physical abuse by appellant and his "nasty dream" about her, and a comment appellant made to the victim's friend that he would be "all over her'' if he was her age.

> In the context of the entire trial, we find defense trial counsel was not deficient in failing to object to these statements. While these remarks may have been objectionable, counsel may have deliberately chosen not to object to avoid drawing the jury's attention to the comments. Trial strategy and even debatable

trial tactics do not establish ineffective assistance of counsel. *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. Strategic choices made after substantial investigation "will seldom if ever'' be found wanting. *Strickland,* supra, 466 U.S. at 681.

Moreover, the failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel. *State v. Crawford,* 5th Dist. No. 07 CA 116, 2008-Ohio-6260, ¶ 72, appeal not allowed, 123 Ohio St.3d 1474, 2009-Ohio-5704, 916 N.E.2d 1255, citing *State v. Fears,* 86 Ohio St.3d 329, 347, 715 N.E.2d 136 (1999).

In short, we find no reasonable probability the outcome of the trial would have been different had such objections been raised. See, *State v. Graber,* 5th Dist. No. 2002CA00014, 2003-Ohio-137, ¶ 154, appeal not allowed, 101 Ohio St.3d 1466, 2004-Ohio-819, 804 N.E.2d 40.

(Ex. 15, Doc. 11-1, at 121-22). Concurring with the majority, Judge Hoffman agreed "no reasonable probability exists the outcome of the trial would have been different had such objections been raised and sustained", even though he disagreed with the majority's finding that the failure to object could be defended as a trial strategy. (*Id.,* at 131).

Upon review, the trial court's finding that Petitioner failed to show actual prejudice was reasonable. Indeed, there was substantial evidence of guilt admitted at trial, including DNA evidence of Petitioner's semen in the crotch of the victim's underwear and her pink towel, the victim's testimony at trial, and her statements to the SANE examiner. The Court agrees three missed objections over the course of the trial in the face of substantial incriminatory forensic and testimonial evidence do not rise to actual prejudice.

Accordingly, the court of appeals' application of the *Strickland* test was reasonable and Petitioner's assertion to the contrary is without merit. Therefore, Petitioner's fourth ground for relief should be dismissed.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the undersigned recommends the Court dismiss the Petition.

s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).